LEWIS W. TAYLOR & others *vs.* SAMUEL A. McPHETERS.

The mayor and aldermen of a city rejected the vote of a ward at a meeting held under tne St. of 1871, c. 334, as illegal, and ordered the city clerk not to record the return. *Held*, on a petition, to which the mayor and aldermen were not parties, for a *mandamus* to the clerk directing him to record the return, that the writ ought not to issue.

PETITION by Lewis W. Taylor, Patrick Cummiskey and four others, citizens of Lowell and legal voters therein, filed May 14, 1872 alleging that on May 7, 1872, an election was had in all

the wards of the city of Lowell on the question whether any person should be allowed to sell or keep for sale ale, porter, strong beer or lager bier in the city; that in Ward Two an election was duly held; that the ballots given in were counted and declared by the warden and inspectors of elections in the ward, and were recorded at large by the clerk of the ward in open ward meeting; that a transcript of such record, duly certified, was transmitted to the respondent, who was clerk of the city; that it was his duty, as such clerk, "to record the return or a plain and intelligible abstract of the same upon the journal of the proceedings of the mayor and aldermen, or some other book kept for the purpose of recording the returns of municipal officers in the city;" that he refused so to do; that the petitioners were deeply interested in the result of the election, in common with many of the inhabitants of the city; that Cummiskey in particular was engaged in the business of selling ale, porter and strong beer; and that, by the refusal of the respondent to record the return, the petitioners were deprived of the proper verification of the result of the election. The prayer was for a writ of *mandamus* to the respondent, "directing him to record said return as required by law." An alternative writ was issued.

The respondent, in his answer to the writ, alleged that the St. of 1871, *c.* 334, under which the election was had, was unconstitutional; that he was not required to record the return; "that as soon as the returns of the elections held on said seventh day of May in the several wards of the city were received by him, he duly filed the same by writing on the back of each of the returns the number of the ward from which it came, and the word 'Returns,' and also, at the same time, made a plain and intelligible abstract of said returns upon a sheet of paper; that the voting lists used in the wards at said elections were duly returned to him;" that at a meeting of the mayor and aldermen, held within two days after the election, for the purpose of examining and comparing said returns and ascertaining the result of the election, he laid before them said returns filed as aforesaid, and said abstract thereof; that at said meeting it appeared that a hundred and more illegal votes were cast at the election in Ward Two,

more than enough to change the result of the election in the city; that a comparison of the return from Ward Two with the check or voting list used showed that one hundred more votes were included in the return than there were names marked on the list as voting; that the ballots or votes cast at the election in Ward Two were not transmitted to the respondent, sealed up or otherwise; that thereupon the mayor and aldermen passed an order instructing the respondent to record the returns of the votes of the election from all the wards in the city, except the return from Ward Two; and that in obedience thereto he made a record in accordance with the order.

The petitioners demurred to the answer, on the ground that the matters therein alleged were insufficient in law as an answer to the writ.

The case was heard on the demurrer, before *Colt*, J., and reserved for the consideration of the full court.

*T. H. Sweetser & W. S. Gardner*, (*C. A. F. Swan* with them,) for the petitioners.

*J. N. Marshall*, for the respondent.

WELLS, J. The St. of 1871, c. 334, does not explicitly provide any mode in which the result of the vote, upon the question which it authorizes to be submitted, shall be ascertained and declared. It does provide that meetings called for the purpose shall be "held in the same manner as meetings for the election of municipal officers." From this it is argued, and we think correctly, that it is the duty of the city clerk, upon receiving the returns from the ward officers, to enter them, or a plain and intelligible abstract of the same, upon the journal of the proceedings of the mayor and aldermen, or some other book kept for the purpose of recording such returns.

This writ is sought to compel the city clerk to make such record, the petitioners alleging it to be necessary for their security and the protection of their rights under a vote of the city of Lowell, taken in May last, in accordance with the statute referred to.

The record of the clerk, when thus made, does not give effect to the vote. It is a mere clerical duty; the purpose being to secure the preservation of the returns, and their presentation in

Taylor *v.* McPheters.

proper form for the action of the mayor and aldermen, whose duty it is to examine and compare them and ascertain the result, and thereupon to declare it. But the power and duty of the mayor and aldermen thus to act do not depend upon the record to be made by the clerk. They may require the returns themselves to be laid before them, though not thus previously recorded; and upon being satisfied therewith, may proceed to declare the result.

We do not think that the security of the petitioners or the protection of their rights does depend upon the record which they ask the court to order to be made. But, further than this, upon the answer to the writ, and the demurrer thereto, it fully appears that there is no occasion for any peremptory order, and that such an order would be ineffectual for any beneficial purpose to the petitioners. The returns were, in fact, laid before the mayor and aldermen within the proper time; and they have taken action thereon, by investigating the character of the returns and the legality of the votes as returned. As the result of that investigation, they have declared the vote of Ward Two to be illegal, and rejected the same; and have also declared the result of the election, excluding the returns of that ward.

It is denied that the mayor and aldermen have any power so to reject the vote of a ward, or to take any action in the matter otherwise than to ascertain from the returns themselves, as made to them from the several wards, what the result of the whole vote has been, and to declare that result. On the other side, it is contended that the power to " ascertain " implies the right to go behind the returns, and investigate their correctness and legality. These questions have been argued before us. But we have no power to determine them in this proceeding, to which the mayor and aldermen are not parties. If the mayor and aldermen have that power, they have exercised it; and, upon the facts disclosed here, the petitioners are entitled to no relief. If no such power exists, the proper certification and declaration of the vote must be obtained by proceeding against the mayor and aldermen. The present proceeding will not advance the remedy, and ought not in any degree to prejudge the real question in controversy.

*Peremptory writ refused.*