### BOROUGH OF ANSONIA *vs.* JOHN P. STUDLEY, JUDGE.

Third Judicial District, Bridgeport, October Term, 1895.   ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The Superior Court has the power, in proper cases, to issue a writ of mandamus to the Court of Common Pleas.

A trial judge is under no legal obligation to make a finding of facts for the purpose of an appeal, when the defeated party has, by non-compliance with the orders and rules of court or by neglect and long continued delay, waived or lost his right to a finding; and the determination of that question is a matter within the jurisdiction of the trial judge, whose decision thereon cannot be reversed by writ of mandamus.

A writ of mandamus is not issuable as a matter of strict right.   If the relief sought is, in the opinion of the trial court, inequitable, the application should be denied.

[Argued October 22d—decided December 16th, 1895.]

APPLICATION for a writ of mandamus, brought to the Superior Court in New Haven County and tried to the court, *Prentice, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court.   *No error.*

The defendant has been for several years, and still is, the judge of the Court of Common Pleas for the County of New Haven.   In February, 1893, an action was tried in said court before the defendant, as such judge, with a jury, in which one Albert B. Manley was plaintiff, and the borough of Ansonia was the defendant.   A verdict was rendered therein in favor of the said Manley.   The present case was an appli-

cation to the Superior Court praying that a writ of peremptory mandamus be issued commanding and requiring the defendant, as such judge, to prepare and file with the clerk of said Court of Common Pleas, a finding of facts setting forth the rulings and questions which it is claimed were made in the trial of said cause, in order to enable the now plaintiff to carry such rulings and questions by appeal to the Supreme Court of Errors. It is alleged that a proper demand was made upon the defendant, as such judge, for a finding, and that he had refused to make it. An alternative writ was issued, to which the defendant made return denying the material allegations therein, and averring that the plaintiff by its conduct had waived all right to have a finding from the defendant, and the plaintiff replied thereto. Afterwards a hearing was had on the issue so joined, and it was found in favor of the defendant; thereupon the application was dismissed, and the peremptory writ refused. From that judgment the plaintiff appealed to this court.

*Edwin B. Gager*, for the appellant (plaintiff).

I. Mandamus lies to compel an inferior tribunal to perform an official duty to which a party is clearly entitled and which is refused to him, when no other remedy is effectual and appropriate. *Seymour* v. *Ely*, 37 Conn., 105. This was true even prior to the enactment in 1821 of the present statute (§ 1294) conferring the power in express terms. *Meacham* v. *Austin*, 5 Day, 233 (1811). See also prevailing argument of Mr. Reeve in *Strong's Case*, Kirby, 345; *Bassett* v. *Atwater*, 65 Conn., 355.

II. The Superior Court has the power by writ of mandamus to compel the Court of Common Pleas, or a judge of that court, to act. High on Extr. Legal Rem., § 1; Spelling, Extr. Relief, § 1363. The Court of Common Pleas is an inferior court as compared with the Superior Court. The Constitution explicitly declares this. Constitution, Art. V., § 1. The terms "superior" and "inferior" must of necessity refer to relative rank under the Constitution and laws of the given State. Our Constitution is explicit in its lan-

guage. If the Court of Common Pleas is not an inferior court, then the Act creating it is unconstitutional. *State* v. *Daniels*, 66 Mo., 193; *Ex Parte Lothrop*, 118 U. S. 113; *Am. Ins. Co.* v. *Cantu*, 1 Pet., 511; *Ferris* v. *Higley*, 20 Wall., 375.

III. The borough of Ansonia has a clear legal right to have a finding of facts in the case tried before Judge Studley. It was the plain legal duty of Judge Studley to make the necessary finding and file it with the clerk of the court. The duty was imposed by § 1132 of the General Statutes. The judge who tried the cause, and he alone must by law, make and file this finding. No act of his can release him. An appeal to the Supreme Court of Errors was the end sought. No one but Judge Studley could make this finding; no appeal could be taken without the finding.

IV. The relator has not been deprived of this right by laches.

The maxim *qui sentit commodum, sentire debet et onus*, clearly applies. After the petitioner had filed its proposed finding, March 15th, 1893, it was under no further legal obligation to do anything till the judge had filed his finding with the clerk. Whatever communications took place between counsel and the judge after that date were for the personal accommodation and assistance of the judge, and had no effect on the absolute right of the petitioner, who has always insisted that a finding should be made. The judge always recognized the right of the petitioner to a finding, until his decision in Dec., 1894, made without notice to the petitioner. If the limitation of twenty days for filing the substitute finding had any legal validity, it was under the general power of the judge, and he had the same power to waive the twenty day limit that he had to make it. The judge's conduct and letters were a most emphatic waiver of the limit, and were in fact an indefinite extension of the time. And therefore the statutory duty imposed on Judge Studley to make and file the finding, still exists.

The recent utterances of our court, as well as the generally received opinion, regard a petition for mandamus as essentially a civil action, and the same rules must necessa-

rily apply between the parties as in other actions. *Bassett* v. *Atwater*, 65 Conn., 355; *Brainard* v. *Staub*, 61 id., 570; *Gilman* v. *Bassett*, 33 id., 298. If there ever was any limitation it was made by the judge personally, and not by virtue of a statute or rule, and he has waived it as fully as one would be deemed to have waived the statute of limitations by analogous conduct. *Taylor* v. *Gillette*, 52 id., 516; *Kelley* v. *Brown*, 32 id., 108; *Ives* v. *Finch*, 22 id., 144; *Hatstat* v. *Blakeslee*, 41 id., 301; *Orcutt's Appeal*, 61 id., 378. "In determining what will constitute unreasonable delay, regard should be had to circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant or other person have been prejudiced by such delay." *Chinn* v. *Trustees*, 32 Ohio St., 236. Quoted and adopted in *People* v. *Common Council*, 78 N. Y., 56.

V. The act which it is asked that Judge Studley be compelled to perform, viz: prepare a finding under the provisions of § 1132 of the General Statutes, is a proper act to be enforced by writ of mandamus. It is the common and well recognized case of a purely ministerial duty. *Smith* v. *Moore*, 38 Conn., 110, 111; *Taylor* v. *Gillette*, 52 id., 216; Exhaustive note to *Dane* v. *Derby*, 89 Am. Dec., 740; *Carpenter* v. *County Commissioners*, 21 Pick., 259; *Am. Casualty Ins. Co.* v. *Fyler*, 60 Conn., 448; 2 Spelling Extr. Relief, § 1406; *People* v. *Pearson*, 2 Scam. (Ill.), 189, 33 Am. Dec., 445; *Sikes* v. *Ransom*, 6 Johns., 279.

VI. The relator had a clear right under the circumstances disclosed in the record to ask the defendant to substitute a copy in place of the orignal requests to charge, which were lost. The question whether the copy presented was correct, could only be ascertained upon inquiry. The relators had the right to have that inquiry made. The defendant refused such right. As to the rights of the relator in this respect, see the following authorities: *Frink* v. *Frink*, 43 N. H., 508, 80 Am. Dec., 189; *Hollister* v. *Judges*, 8 Ohio St., 201, 70 Am. Dec., 100; *Commonwealth* v. *Roark*, 8 Cush., 210; *Eaton* v. *Hall*, 5 Metc., 287.

*E. P. Arvine* and *William S. Pardee*, for the appellee (defendant).

I. Can the Superior Court issue a mandamus to the Court of Common Pleas?

Section 1294 of the General Statutes does not, in terms, give the Superior Court power to issue writs of mandamus to other courts, and if it has such power, it must result from the common law. According to common law, a superior court may issue a mandamus to an inferior and subordinate court, in cases where the inferior court acts ministerially.

Is the Court of Common Pleas an inferior or subordinate court? What is an inferior court? "A court the proceedings or determinations of which are subject to the supervision or review of another court of general jurisdiction in the same State." Century Dic., Court. Inferior courts : " those which are subordinate to other courts; also those of a very limited jurisdiction." Bouvier's Law Dic., Court. Mandamus may be issued to " subordinate courts." *Worden* v. *Richmond*, 98 Am. Dec., 373. It will not be pretended that the Court of Common Pleas is in any way subject to the supervision of the Superior Court, or that it is a court subordinate to that court. None of our courts are courts of general jurisdiction, in the sense that the English courts were. *Raymond* v. *Bill*, 18 Conn., 88. The County Court was held to be a court of general jurisdiction. *Perry* v. *Hyde*, 10 Conn., 329. The Court of Common Pleas has a larger jurisdiction than the County Court had. A wholly unprecedented interference with the Court of Common Pleas is asked from the Superior Court. It is not pretended that the Court of Common Pleas is in any way subordinate to the Superior Court, or that there is any statute granting to the Superior Court supervision over the Court of Common Pleas. Nor is any argument made to show that the Court of Common Pleas is an inferior court within the meaning of the common law. · The maxim, " no wrong without a remedy," means no legal wrong without a remedy. A judge who has discretionary power may decide erroneously, but this is certainly not a legal wrong.

Suppose the defendant in this case had been a judge of the Superior Court, would there have been any remedy ?

II. Assuming that the Court of Common Pleas is a subordinate court, its orders and its decisions upon these orders are not subject to review by mandamus in the Superior Court. High on Ex. Rem., §§ 156, 176. The authorities cited by the plaintiff show that this power is only exercised against inferior tribunals or ministerial officers, when there is no discretion involved in the action which is the subject of mandamus. The following leading cases in Connecticut hold the same doctrine. *Colt* v. *Roberts*, 28 Conn., 330 ; *Freeman* v. *Selectmen of New Haven*, 34 id., 406 ; *Seymour* v. *Ely*, 37 id., 103 ; *Pond* v. *Parrott*, 42 id., 13 ; *State* v. *Ousatonic Water Co.*, 51 id., 137 ; *Am. Casualty Ins. Co.* v. *Fyler*, 60 id., 448.

The question then is, was the decision of Judge Studley not to make a finding, one involving discretion, or the finding of a fact within his province ? In deciding the questions presented to him, or any of them, he must have acted judicially. " The judge before whom the cause was tried has the power to determine the accuracy of the bill of exceptions, and whether it correctly recites the points made and opinions excepted to ; and the exercise of this power is beyond control by mandamus." 14 Amer. & Eng. Ency. of Law, 123, 124 ; *Spalding* v. *Gates*, 7 Wis., 693 ; High on Ex. Rem., §§ 151, 154, 158, 163, 168, 170, 174. The case at bar is a much clearer one of discretion on the part of the defendant than that presented in *Ins. Co.* v. *Fyler*, 60 Conn., 448.

III. Assuming that the Superior Court has jurisdiction over the controversy in this case, there is no error in the judgment of the court below. It is manifest that the question of laches is of no importance in the case, provided the relator lost its right of appeal by not filing the new finding within the twenty days limited by Judge Studley. The finding filed by the relator in March, 1893, was withdrawn. This finding of the court below is one of fact from the evidence, and cannot be reviewed here. From the time counsel withdrew the old finding there was none left in the case. Both the statute in reference to extending the time for ap-

peal, and the rule of court with reference to an extension of time for filing a finding, provide that such extensions shall be granted only upon due cause shown. General Statutes, § 1131; Rules of Court, p. 39, Rule 17, § 3. It would seem quite as doubtful whether an extension could have been made for an indeterminate time. At most, the letter of Judge Studley, of January 30th, could only have been regarded as a suggestion as to what the court might do, if the finding was filed within a reasonable time. It is immaterial how Judge Studley came to write the letter. If he did not intend it as an extension of the time, it cannot operate as such. That he did not intend this letter as an extension of time, appears from the finding.

The finding of the court below that the relator, after the receipt of Judge Studley's letter, was guilty of laches from January 31st to September 11th, 1894, is one of fact, and is not a legal conclusion. *Farrell* v. *Waterbury Horse R. R. Company*, 60 Conn., 236. The agreement of counsel could not extend the time for filing the finding. *Woodruff* v. *Fellows*, 35 Conn., 105. Manifestly only the judge can extend the time for filing a finding, and the agreement of the parties, whether communicated or not, cannot be substituted for his authority.

ANDREWS, C. J. At the very outset we are challenged by the defendant's counsel with the question : " Can the Superior Court issue a mandamus to the Court of Common Pleas ? "

" A writ of mandamus, is a command issuing from a superior court, to some inferior court of judicature, corporation, or public officer, requiring them to do some particular act, therein specified, which appertains to their office and duty." 1 Swift's Dig. 563. Our General Statutes, § 1294, says : " The Superior Court, Court of Common Pleas, and District Court, may issue writs of *mandamus* in cases within their jurisdiction, respectively, in which such writs may by law be granted, and proceed therein, and render judgment according to the course of the common law."

The defendant's counsel argue that the Court of Common

Pleas is not inferior to the Superior Court in such a sense as is intended by the definition of mandamus, and they cite various authorities. It is certainly true that the power to issue the writ of peremptory mandamus, implies that the court or other party to whom it is issued, is so far inferior to the court issuing it as to be in duty bound to obey its command, when properly issued. Whether inferior or not in other respects, is immaterial.

The Constitution declares that " The judicial power of the State shall be vested in a Supreme Court of Errors, a Superior Court, and such inferior courts as the General Assembly shall, from time to time, ordain and establish." Under this provision the General Assembly has no power to ordain and establish any court which is not inferior to the Superior Court. At the time the constitution was adopted, the Superior Court as a court of law, was, and ever since has been, a court of general jurisdiction. It has jurisdiction of all matters cognizable by any court of law, of which the exclusive jurisdiction is not given to some other court. The fact that no other court has the exclusive jurisdiction in any matter, is sufficient to give the Superior Court jurisdiction over that matter. General Statutes, Revision of 1808, page 205; *State ex rel. Morris* v. *Bulkeley*, 61 Conn., 287, 374. The Court of Common Pleas in New Haven County was first established by the General Assembly in 1869; and we are of opinion that it is so far inferior to the Superior Court, that a writ of mandamus may be issued by that court to the Court of Common Pleas, which it would be the duty of the latter court to obey.

There is in the record sent up to us, a somewhat extended finding of facts, which sets forth the evidence and the facts of the case as they were presented in the Superior Court, at the close of which that court says: " I find upon the facts aforesaid, that counsel for the said borough, by their conduct aforesaid during the period from January 31st, 1894, to September 11th, 1894, were guilty of gross laches, and that by reason thereof, if for no other reason, they waived and lost

all right to pursue their appeal in said case, and all right to claim or have a finding of facts therein from the defendant."

The first reason of appeal is that " the court erred in finding, upon the facts set forth, that counsel for said borough by their conduct as set forth in the finding during the period from January 31st, 1894, to September 11th, 1894, were guilty of gross laches, and that by reason thereof, if for no other reason, they and said borough waived and lost all right to pursue said appeal in said cause, and all right to have and claim a finding of facts therein from *Judge Studley*."

The other reasons of appeal are only variations of this one; they present no other or different question of law.

Whether or not this is such " a special assignment of errors, in which the precise matters of error, or defect in the proceedings of the court below, relied on as ground of reversal are set forth," as to require this court to consider it, we do not decide. The point was not raised.

It is shown by the finding of facts in the present case, that after the verdict was rendered in the case of Manley v. Ansonia, counsel for Ansonia gave notice of their intention to appeal to the Supreme Court of Errors, and filed within the proper time a proposed finding of facts. They also filed with *Judge Studley* a motion for a new trial, on the ground that the verdict was against the evidence in the cause. Both matters were pending at the same time, and interviews between counsel and *Judge Studley* were had on different occasions, in respect to one or both of them. As the result of one of such interviews, one of the counsel for Ansonia, with the consent and approval of the judge, withdrew from the clerk of that court the said proposed finding, which had been filed by them as aforesaid, and took it away with him, upon the arrangement made with *Judge Studley*, that he and his associate counsel should prepare and file a new finding in substitution therefor, in conformity to suggestions which had previously been made by the judge. They were given twenty days within which to file such substitute proposed finding. This appears to have been sometime in November, 1893. The finding then goes on to state with considerable minuteness the acts and conduct of the counsel respecting such with-

drawal, and the preparation of the proposed substitute there-for, as well as the remarks and the letters of *Judge Studley* on the same matter, from that time forward to a day which appears to have been in November, 1894, when *Judge Studley*, having ascertained that no extension of time for the filing of a substitute proposed finding had been given, and that no order in relation thereto had been made either by himself or by his associate *Judge Hotchkiss*, and that no substitute pro-posed finding had been filed, determined that said borough was not entitled to have a finding from him, and decided not to prepare one.

For the purposes of the present case it is conceded that up to November, 1893, it was the duty of *Judge Studley* to prepare a finding in said case of Manley v. Ansonia, such as would enable the borough to present by appeal to the Supreme Court of Errors, the questions of law that had been made by counsel on the trial of that case. And, of course, it must be conceded, that it would be possible for the counsel for Anso-nia, by their conduct, to release *Judge Studley* from that duty; such as non-compliance with the rules, disobedience to the orders of court, or the like; or by an open abandonment of the appeal; or by long continued delay; or any other con-duct such as to afford satisfactory evidence of a waiver of all right to appeal.

The whole contention of the plaintiff in the Superior Court was, as it has been here, that although the said proposed find-ing was removed from the manual custody of the clerk of the Court of Common Pleas, yet such removal made as it was, under the circumstances set forth in the finding, did not affect the duty of *Judge Studley* in the premises at all, but that his duty to prepare a finding in the case is, and always has been, precisely the same as if the original proposed finding had at all times remained in the hands of the clerk. On the other hand, the contention made in behalf of the present defendant is, that said removal of the proposed finding by counsel for Ansonia was, under the circumstances set forth in the find-ing, an abandonment by them of their intention, or a waiver of their right, to appeal to the Supreme Court, and that he was thereafter under no duty to prepare a finding.

Which one of these contentions ought to prevail, was an ultimate fact to be decided upon the evidential facts in the case. One of these evidential facts was the intention with which the proposed finding was withdrawn from the hands of the clerk—the intention of *Judge Studley*, as well as the intention of counsel for Ansonia—as shown by their conduct then and afterwards. The Superior Court has decided on the facts, that the said borough had waived and lost all right to have or claim a finding in said case from the defendant, and denied the application for a peremptory mandamus.

It seems to us that a case for mandamus is not shown. *Judge Studley*, upon the evidence, came to the conclusion which he did; other persons, upon the same evidence, might have come to a different conclusion. Even if the Superior Court believed that *Judge Studley* was wrong, his decision could not be reversed by a writ of mandamus. It was a matter within his jurisdiction, and one in respect to which his judgment had been exercised.

A mandamus can never be issued to compel a judge to decide otherwise than according to the dictates of his own judgment. *State ex rel. Pinkerman* v. *Police Commissioners*, 64 Conn., 517; *United States* v. *Lawrence*, 3 Dallas, 42; *Ex parte Crane*, 5 Peters, 190; *Amer. Cas. Ins. Co.* v. *Fyler*, 60 Conn., 448. If the conduct of the borough of Ansonia and its counsel had been such as to make it inequitable, in the judgment of the Superior Court, that they should have the relief sought, the peremptory writ was properly denied. *Chesboro* v. *Babcock*, 59 Conn., 213; *Belcher* v. *Treat*, 61 Me., 577; *People ex rel. Land Co.* v. *Jeroloman*, 139 N. Y., 14; *Taylor* v. *McPheters*, 111 Mass., 351; *Life & Fire Ins. Co.* v. *Wilson*, 8 Pet., 291; *Reeside* v. *Walker*, 11 Howard, 272, 289; *People* v. *Ferris*, 76 N. Y., 326; *People* v. *Campbell*, 27 id., 496; *Matter of Sage*, 70 id., 220; Spelling on Ex. Rem., § 1371.

There is no error.

In this opinion the other judges concurred.