THE STATE OF CONNECTICUT EX REL. C. JACKSON
WHITE *vs.* CHARLES F. MILLS ET ALS.

\* First Judicial District, Hartford, May Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The Assistant State's Attorney in Fairfield County, authorized (§ 5480) to sign an application for an alternative writ of *mandamus* "in the absence or disqualification of the State's Attorney," is, when signing such a writ, presumably so acting, unless the contrary appears.

A municipal council was expressly empowered by the city charter to declare vacant any elective office in the city, whose incumbent "shall be convicted of malfeasance in office or of any infamous crime," and forthwith to fill such vacancy. *Held:*—

1. That this did not authorize the council to dismiss one of its own members who had not been convicted, even though he admitted the truth of the charges in a hearing before that body, and therefore that its action to that end was altogether null and void; but as no attempt had apparently been made by the council to carry its vote into physical effect by preventing the member in question from exercising the duties and functions of the office of councilman, or in filling such declared vacancy, the situation did not present such a clear case of illegal removal or suspension from office as to call for the exercise of the extraordinary power of reinstatement by *mandamus.*

2. That inasmuch as the relator, by his demurrer to the return, had admittedly been guilty of malfeasance in office, he did not come into court with clean hands and was therefore in no position to invoke the discretionary writ of *mandamus* to test the question of his right to reinstatement. (*Two judges dissenting.*)

The requirement that a suitor must show clean hands is a condition precedent to consideration of the merits, and it applies to *mandamus* to compel reinstatement in public office with as much, if not greater, force, as in litigation involving only private interests .

Submitted on briefs May 2d—decided June 22d, 1923.

APPLICATION for an alternative writ of *mandamus* to compel the Mayor and Council of the City of Norwalk to restore the relator to membership in the council,

\* Transferred from the third judicial district.

or to show cause to the contrary, brought to and tried before the Superior Court in Fairfield County (*Banks, J.*), which sustained a demurrer to the defendants' return. No other pleadings having been filed, judgment was entered that a peremptory writ be issued requiring the Mayor and Council to restore the relator to his office as Councilman of the City of Norwalk, from which the defendants appealed. *Error and cause remanded with direction to set aside the judgment and dismiss the application.*

The facts are not disputed. It appears from the application for the writ, that the relator was duly served with notice to appear before the council to answer to the charge that while holding office as councilman he encouraged and solicited a police sergeant of the city of Norwalk to find for him a person from whom he might purchase intoxicating liquor contrary to law; that pursuant to such solicitation the police sergeant did bring him into communication with such a person, from whom the relator, while holding such office, did repeatedly purchase intoxicating liquor.

The relator appeared before the Council, admitted the charge, and disputed the authority of the Council to try a member of the Council for the charge alleged. The Council unanimously voted that the relator be dismissed from office, and that his office be declared vacant; and notice of that vote was served on the relator. The application also alleged that the alleged vacancy so declared had not been filled, and that the relator's dismissal was illegal because not authorized by the charter of the city of Norwalk.

A motion to quash was made upon the grounds that the writ was prayed out by the Assistant State's Attorney, that the Council acted within its authority, that the relator did not come into court with clean hands, and that right and justice would not be promoted by

the issuance of the writ. The motion to quash was overruled (*Avery, J.*) on the ground that the Council had no power to dismiss the relator from his office as councilman for the cause alleged in the alternative writ. The defendants then filed a return alleging that the conduct of the relator as admitted in the alternative writ was in violation of his oath of office as a councilman; that as a reward to the police sergeant, he thereafter urged upon the Mayor and members of the Council that the police sergeant be promoted to the office of Chief of Police if and when a vacancy should occur in that office; that the conduct of the relator was such as to make him unfit to hold the office of councilman, and that his restoration to office would not enure to the benefit of the public. A demurrer to the return was sustained (*Banks, J.*) on the ground that the return and demurrer raised the same questions already passed upon in overruling the motion to quash.

*William F. Tammany*, for the appellants (respondents).

*John H. Light*, for the appellee (relator).

BEACH, J. The Assistant State's Attorney had power to sign the writ "in the absence or disqualification of the State's Attorney," and until the contrary appears, we must presume that he acted in accordance with his statutory authority (§ 5480). *Hellman* v. *Karp*, 93 Conn. 317, 323, 105 Atl. 678; *Atwater* v. *O'Reilly*, 81 Conn. 367, 371, 71 Atl. 505; *State* v. *Main*, 69 Conn. 123, 140, 37 Atl. 80.

By the charter of the city of Norwalk (16 Special Laws, p. 1055, § 55) the Council is authorized, "whenever any elective officer of said town or city . . . shall be convicted of malfeasance in office or of any infamous

crime," to "declare such office vacant," and forthwith proceed to fill such vacancy.

It is urged that the word "convicted," as used in the charter, imports a "conviction" which is, in the language of Chief Justice Marshall in *Ammidon* v. *Smith,* 14 U. S. (1 Wheat.) 447, 461, "a technical term applicable to a judgment on a criminal prosecution"; and that the Council is not, by the charter of the City of Norwalk, constituted a court with jurisdiction to try, convict and sentence the relator for malfeasance in office. We quite agree that the Council is not a court, and that it has no jurisdiction to hear and determine a disputed issue of malfeasance in office. But the issue of jurisdiction is not presented by this record in that form. On the contrary, it appears from the alternative writ that the relator admitted the facts as charged, and claimed that he purchased the whiskey for his own use. It required no argumentative demonstration to establish the character of the relator's admitted conduct. By virtue of his office as a member of the Council, he was in a position to put great pressure upon the police sergeant, and he misused his office for the purpose of corrupting a subordinate official into assisting him to violate a law with whose enforcement that official was especially charged, and also committed an offense, or a series of offenses, punishable by fine and imprisonment. Incidentally the particular bootlegger involved might well have supposed himself protected, for the time being, in the pursuit of his unlawful trade. In effect the relator stood before the Council admitting that he had been guilty of malfeasance in office; and his claim that the Council had no jurisdiction to declare his office vacant, rests wholly upon the distinction between a prior conviction of malfeasance in office and a present admission of malfeasance in office. Manifestly, the underlying reason of public policy

which actuated the General Assembly was to give the Council power to summarily dismiss from office any elective officer whose malfeasance in office had been conclusively established, and the limitation to act until after a prior conviction, was for the protection of the person charged. So far as the language of the charter goes, the case of an elective officer admitting malfeasance in office is a *casus omissus;* and since the authority is expressly conferred and expressly limited, the rule in *Rex* v. *Richardson,* 1 Burr. 517, has no application, and the Council had no jurisdiction.

It follows that the vote of the Council purporting to dismiss the relator from office, and service of notice of that vote upon the relator, were in and of themselves absolutely nugatory. Standing alone they had no legal effect, and there are no allegations in the alternative writ indicating that any attempt was made to carry them into physical effect by preventing the relator from exercising the duties and functions of his office as a member of the Council. In this respect the case differs from *State ex rel. Tyrrell* v. *Common Council of Jersey City,* 25 N. J. L. 536, where the Council, being without jurisdiction, not only voted to suspend the relator, but also voted that he be not allowed to vote or take part in debate. In the absence of any allegation that the ineffectual vote of dismissal was followed by some action tending to prevent the relator from taking part in the business of the Council, or excluding him from the privileges and emoluments of the office of councilman, the alternative writ does not state a clear case of illegal removal or suspension from office, and does not state a case for the exercise of the extraordinary power of reinstatement.

This is enough to dispose of the case, but it seems desirable to point out another reason why the peremptory writ should not issue. We have said that the

relator stood before the Council admitting malfeasance in office, and he stands before the court in the same position, except that by demurrer to the return he also admits recommending the police sergeant to the mayor and councilmen as a candidate for the office of chief of police, if and when a vacancy should arise in that office. The question, then, is whether one whose unfitness for office is admitted on the pleadings, is in any position to invoke the discretionary writ of *mandamus* to test the question of his right to reinstatement.

The requirement that a suitor must show clean hands is a condition precedent to consideration of the merits, and it applies to *mandamus* to compel reinstatement in public office with as much, if not greater, force, as in litigation involving only private interests. It was applied, when the dismissal from office was for good cause, but without notice, in *Rex* v. *Mayor of Axbridge,* 2 Cowp. 523, and *Rex* v. *Mayor of London,* 2 T. R. 177. In *McQueen* v. *Common Council of Detroit,* 116 Mich. 90, 74 N. W. 387, a boiler inspector had been discharged without notice or opportunity for hearing and defense; but it was admitted that he was discharged for being drunk on duty, and the court said, on petition for *certiorari* to review the proceedings in the lower court: "We therefore decline to issue the discretionary writ of *certiorari* to review this proceeding. We, of course, express no opinion upon the question of the power of removal. We only determine that, where one's unfitness for the position is confessed, he cannot invoke discretionary writs to test the question." In *People ex rel. Wood* v. *Assessors,* 137 N. Y. 201, 33 N. E. 145, the relator had sold a small part of a tract of land, and applied for an apportionment of the taxes already assessed. This was done, and about one twelfth of the tax was apportioned to the part sold,

but by mistake the assessors' clerk transposed the figures and furnished the relator with a certificate showing that the unsold balance of the tract was taxed at the lesser figure. The relator, knowing the truth, paid the tax as certified and received the collector's receipt. Then the purchaser, by *mandamus*, compelled the collector to correct his books to conform to the apportionment actually made, and the result was that the relator's premises were advertised for sale for non-payment of the balance of the tax, and he in turn applied for a writ of *mandamus* to compel a cancellation of the tax. The trial court granted the peremptory writ on the ground that the collector had no authority to correct his books after the tax had been paid. The General Term held that *mandamus* ought not to have been granted, and the Court of Appeals, in affirming that order, said: "But there is still a further ground upon which the decision below can be upheld, even if we assume that there was a technical want of adequate authority to make the alteration and correction complained of. . . . The writ will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud. The relator must come into court with clean hands, and he cannot invoke this extraordinary remedy, as in this case, to evade the payment of his just portion of a tax by taking and claiming the advantage of a confessed mistake." In *Burke* v. *Connolly*, 76 Misc. 337, 135 N. Y. Supp. 179, an employee in the classified civil service was removed pending the determination of indictments

against him. He was acquitted on one indictment and the others being dismissed, he applied for a writ of *mandamus* to compel his reinstatement. Speaking of the relator's testimony before the grand jury, the court said that he "exhibited an utter disregard of his obligation to protect the public interests, and an absolute unfitness for the office which he held, and, although acquitted of the crimes for which he was indicted, his permanent separation from the public service will enure to its benefit. . . . Holding this view, I deem it unnecessary to consider the other questions discussed by counsel in their briefs, which go to the merits of the matter under consideration, preferring to place my decision to refuse the writ as a matter of discretion upon the sole ground that it would be contrary to the public interests to grant it." In *State ex rel. Hathorn* v. *U. S. Express Co.*, 95 Minn. 442, 104 N. W. 556, the alternative writ was issued to compel the defendant to accept packages offered to it for transportation under a statute providing for the issuance of a writ of *mandamus* to compel common carriers to receive goods without discrimination. The return alleged that the relator was engaged in a lottery scheme, and the defendant might make itself criminally liable for knowingly carrying property pertaining to a lottery business. In upholding the refusal of the trial judge to issue the writ, the court said: "He would have abused his discretion, if, at the instance of one not coming into court with clean hands and for a rightful purpose, but the promoter of a scheme sure to defraud, if not to deceive, he had issued compulsory process." See also High on Extraordinary Legal Remedies (3d Ed.) § 26; 2 Spelling on Injunctions and other Extraordinary Remedies (2d Ed.) § 1380; 26 Cyc. 150; 18 R. C. L. p. 138.

There is error, the judgment is set aside, and the

cause remanded with direction to sustain the motion to quash the alternative writ.

In this opinion BURPEE and KEELER, Js., concurred.

WHEELER, C. J. (dissenting). The relator, by vote of the Council of the City of Norwalk, was dismissed from the office of councilman and his office declared vacant. My associates agree that the action of the Council was beyond its power, and the respondents did not controvert this position. The demurrer to the complaint presents the case of an officer, elected by the people of Norwalk, dismissed from his office, and the office declared vacant, by a body acting without the sanction of law. There is no question made upon the record as to the relator's legal right to this office and to its immediate possession, nor any question but that these respondents by their action have deprived him of his legal right to his office. The vacancy in the office has not yet been filled. A restoration to his office is his right, and a remedy which does not accomplish that cannot be called an adequate remedy. An action for damages will not give the relator his office. He has no adequate remedy other than by a writ of *mandamus* restoring him to his office. My associates hold that *mandamus* will not lie for two reasons: first, that the alternative writ of *mandamus* in this case "does not state a clear case of illegal removal or suspension from office, and does not state a case for the exercise of the extraordinary power of reinstatement." In an earlier part of the opinion my associates say the vote of the Council and its service upon the relator "were in and of themselves absolutely nugatory," so that we think the statement that "the alternative writ does not state a clear case of illegal

removal or suspension from office," is an inadvertence.
Its position that the alternative writ does not state a
case for the exercise of the extraordinary power of rein-
statement by way of *mandamus,* is rested upon the
ground that the vote of dismissal should have been
followed by some action of the Council "tending to
prevent the relator from taking part in the business of
the Council, or excluding him from the privileges and
emoluments of the office of councilman." This, the
majority opinion asserts, is enough to dispose of the
case.

It will be at once recognized that the denial of this
remedy to this relator upon the ground that he should
have alleged that the Council had, in addition to its
vote of dismissal and declaring the office vacant, fur-
ther voted not to allow the relator to take part in the
business of the Council, or by some action tending to
prevent the relator acting as councilman, is a purely
technical ground. Neither the motion to quash nor
the demurrer to the defendant's return made this
point. It does not appear in the record. The respond-
ents in their brief and in their oral argument did not
make the point. The only authority cited in its sup-
port in the majority opinion is *State ex rel. Tyrrell* v.
*Common Council of Jersey City,* 25 N. J. L. 536. There
the vote was to suspend the relator, but also that he
be not allowed to vote or take part in debate. If the
vote of suspension was valid, that prevented the coun-
cilman thereafter voting or taking part in debate, and
the addition of the specific prohibition did not add to
the effectiveness of the vote. In the instant case the
relator was dismissed from office and his office declared
vacant. No subsequent action of the Council forbid-
ding the relator from taking part in the business of the
Council, could add to the effectiveness of this vote.
Requiring the relator to demand of the Council the

right to serve as councilman, would have been an idle ceremony and might have precipitated a breach of the peace. We are satisfied that the writ of *mandamus* cannot be refused upon this ground. The right of this relator to this writ is, we think, clear under our law.

In *State ex rel. Comstock* v. *Hempstead*, 83 Conn. 554, 556, 78 Atl. 442, we held: "A public official, such as the relator, ousted from an office in the performance of whose duties he is engaged and which he holds by clear legal title, can be restored to his office by *mandamus*, so long as the office is not filled by an occupant having color of title." In this case, at page 561, we thus summarize the function of the remedy by way of *mandamus* to secure a restoration to a public office: "*Mandamus* neither gives nor defines rights which one does not already have. It enforces, it commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or contested right, hence it cannot adjudicate a title, nor settle conflicting claims to an office. It is an expeditious remedy called into action to protect an undoubted legal right. It will restore one to an office from which he has been illegally removed when a successor is not filling the office under color of title. It cannot restore one to an office from which he may have been illegally removed, when a successor is filling the office under color of title."

A reference to the cases cited in *State ex rel. Comstock* v. *Hempstead*, and to the standard textbooks with the cases therein cited, will show that the doctrine enunciated in *State ex rel. Comstock* v. *Hempstead* is established law in this country. 2 Bailey on Habeas Corpus, § 248; High on Extraordinary Legal Remedies (3d Ed.) §§ 67–70 inclusive; 2 Spelling on Injunctions and other Extraordinary Remedies (2d Ed.) §§ 1572–1579. The

respondents did not controvert these principles of our law, nor do we understand the majority opinion to controvert them. The opinion agrees with us that the relator has been illegally deprived of his office and that *mandamus* is the only remedy for him to pursue in order to be restored to his office, but my associates insist, aside from the point of the inadequate allegations of the alternative writ, that the issuance of the writ is not a matter of right but one to be exercised in the sound discretion of the court, and that the circumstances of this case make it impossible, in the exercise of a sound judicial discretion, to issue this writ in behalf of the relator, since the admitted facts disclose that the relator is not in court with clean hands. The facts upon which this claim rests are in the admission of the allegations of the complaint by the motion to quash, that is, the admission by the motion that the relator asked a policeman of the City of Norwalk if he knew where the relator could buy some whiskey, and at a later date, while the policeman was off duty, that he went with him to one Vaclanik, where the relator bought some whiskey, and later, on two occasions, the relator came to Vaclanik and purchased whiskey of him.

The demurrer to the return admits the allegations of paragraphs nine and ten of the return, which allege that the relator, in violation of his oath as a councilman and as an elector, solicited and prevailed upon Gibson, a police sergeant of the City of Norwalk, to place him in a position to buy liquor in violation of the United States Prohibition Laws, and did in fact buy liquor in violation of these laws, and did sell and offer to sell such liquor in violation of the law of the United States and of the State of Connecticut, while holding the office of councilman of that city. And the further allegation of the return that the relator, in

anticipation of a change in the office of chief of police of that city, and as a reward to this police sergeant, did urge the mayor and members of the council of the city to promote the sergeant to the office of chief of police. These are the only facts in the record upon which the respondents based their claim that the relator was in court without clean hands. The facts stated in the majority opinion go somewhat beyond these allegations, but we anticipate that the issue of clean hands is no stronger upon the facts stated in the opinion than in the record, unless, indeed, the facts in the opinion be read as describing conduct on the part of the relator as a councilman. This, as the record shows, is not this case.

The immediate question is whether or not the court can refuse to issue the writ in behalf of a relator to restore him to an office when the writ admits such improper conduct on the part of the relator, but not related to his office, as to show his unfitness to hold his office. If the court can exercise its discretion in this way, it follows that one may be dismissed from any elective office to which his title is absolute, by a body acting without authority of law, and although the facts present show an illegal removal and absolute legal right to the writ, the court may in its discretion refuse to issue the writ and thus leave the relator remediless. The court will then add to the causes of removal another cause not found in the statute, and enforce it, although the body authorized by the statute to make removals for a named cause or causes cannot act for such an offense.

We think Mr. Bailey, in his work on Habeas Corpus, Vol. 2, § 201, points out the fallacy in such an attempted exercise of discretion, when he says: "I infer therefore, the discretion referred to in many of the cases, is that the court may refuse to issue the writ,

where it does not clearly appear that he [the relator] is entitled to it, not that the court has such a discretion, where the right clearly appears. Practically in all the cases which assert the *mandamus* as a discretionary writ, it will be found, that the writ was denied upon the ground that the relator's right did not appear. It would be strange indeed, if a party was possessed of a clear right and had no other remedy, that courts had a discretion which could be exercised to deny him *mandamus* to enforce that right. It is the boast of our law, that there is no wrong without a remedy."

That the court has no discretion in a case such as the instant case was decided in *Daly* v. *Dimock*, 55 Conn. 579, 590, 12 Atl. 405, where we said: "But it is said that the writ is not demandable as a matter of right, but is awarded in the discretion of the court. It is doubtless true that in many cases the court will exercise its discretion. The court, however, will not refuse the writ where the relator has a clear legal right, there is a substantial matter involved, and there is no other adequate remedy."

In *Illinois Central R. Co.* v. *People*, 143 Ill. 434, 458, 33 N. E. 173, the court reached a like conclusion, saying: "It is urged by counsel for appellant, that the writ of *mandamus* should have been refused by the trial court upon the alleged ground that the exercise of a sound judicial discretion would naturally lead to such refusal. If a clear legal right to the writ is shown by the party applying for it, he is entitled to its issuance."

In *Moody* v. *Fleming*, 4 Ga. 115, 117, the Supreme Court, while stating that the writ is not one of mere right but of discretion, concluded: "We would, however, not be understood to say that the courts in this country could refuse this writ when demanded by a per-

son holding a clear legal right under the laws of the State, with no other remedy to enforce it."

*Mandamus* was held to have been properly refused, as within the discretion of the court, in a case where the relator had delayed his compliance with the rules of court, so that his conduct had made it inequitable in the judgment of the trial court to then issue the writ. *Ansonia* v. *Studley, Judge,* 67 Conn. 170, 180, 34 Atl. 1030. So in *United States ex rel. Turner* v. *Fisher,* 222 U. S. 204, 209, 32 Sup. Ct. 37, the writ was refused to enforce rights fraudulently acquired. Of such a case the court says: "But *mandamus* is not a writ of right. It issues to remedy a wrong, not to promote one, and will not be granted in aid of those who do not come into court with clean hands." These are examples where the court has properly exercised its discretion.

In a case such as this, where the relator was illegally removed from an office to which he had title and no one has been appointed or elected to fill the vacancy, the court has no discretion other than to restore to the relator the office from which he was illegally dismissed. The maxim that one who comes into equity must come with clean hands, if applicable to an action of *mandamus,* can only apply, upon this record, to the office to which the relator seeks to be restored. The relator was not dismissed for dereliction of official duty; so far as the record shows, the relator's official conduct as a councilman was not questioned.

Originally the power of issuing or refusing the writ was exercised by the King, and hence was within his absolute discretion. When the power was vested in the courts of England, it in a sense was still a discretionary power, yet it was no longer an absolute discretion. In cases where the writ was refused upon the ground of discretion, to a relator seeking to be restored

to office, it will be found, as a rule, that the cases were those where the relator had not made out a clear legal right to the remedy, or those where his conduct in relation to the office had been such as to make it inequitable to grant him the relief sought.

We know of no instance where a court of last resort has held that a court could refuse the writ to one who had been illegally dismissed from his office and whose conduct as to the office and the institution of the proceeding had been free from fraud, delay, or other conduct making it inequitable to issue the writ. The discretion over the issuance of the writ arose out of the prerogative power from whence it came, but now it is to be treated, in cases where the legal right of the relator is assured, much like other actions. "Doubless the writ was originally a prerogative one, but it has ceased to depend upon any prerogative power, and is now regarded in much the same light as ordinary process." *Gilman* v. *Bassett,* 33 Conn. 298, 305; 2 Bailey on Habeas Corpus, § 198.

The conduct of the relator showed a disrespect for law which was highly reprehensible. The action of the Council showed on its part a respect for law which is highly commendable and should be the attitude of all good officials and citizens. It made the mistake of acting beyond its powers in its endeavor to rid the Council of a member who had offended against the law of his country and State by conduct contrary alike to the moral code and to the law. Nevertheless, this relator was entitled to the remedy given him by the law of our State, and to deny to him his right to be restored to his elective office as a mere matter of judicial discretion, in our judgment, conflicts with sound public policy.

In this opinion CURTIS, J., concurred.