LOUIS LEVENTHAL *vs.* P. HARRY JENNINGS & others.

Suffolk.   November 12, 1941. — May 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Equity Jurisdiction*, Plaintiff's clean hands, Voluntary association, Class
suit. *Voluntary Association. Equity Pleading and Practice*, Master:
recommittal, report of evidence, exhibit, exceptions to report.

No error appeared in the denial of a motion to recommit to a master
grounded on facts, the evidence of which, if any, did not appear in
the record, or on matters which were discretionary with the judge.

It was proper to strike from the report of a master, who was not ordered
to report evidence, a statement that exhibits introduced in evidence
before him "are hereby incorporated by reference," where it did not
appear that such exhibits were incorporated in his findings of fact.

An exception to a master's report must be overruled unless grounded
upon an error apparent on the face of the report.

A suit in equity brought by the president of a local labor union in behalf
of himself and such other members as might desire to join, in which
the plaintiff, who was not joined by any other member, complained
of alleged unjustified action by the international body of the union
ousting him and others from their offices and appointing a "receiver"
for the local, was barred by the fact that the plaintiff had been guilty
of improper conduct respecting the finances and other affairs of the
local which precipitated the action of the international body.

BILL IN EQUITY, filed in the Superior Court on November
23, 1939.

The decrees appealed from were entered by order of
*Good*, J.

*E. M. Dangel*, (*L. E. Sherry & G. A. Goldstein* with him,)
for the plaintiff.

*H. R. Donaghue*, for the defendants.

QUA, J.   The plaintiff brings this bill in behalf of himself
and such other officers and members of a local union of
newspaper chauffeurs, distributors and helpers, hereinafter
called the local, as may desire to join, against the interna-
tional brotherhood to which the local belongs, the joint
council, another local labor organization having some appel-
late functions, one Pearlstein as secretary-treasurer of the

local, and several other individuals stated to be exercising without right the powers of officers of the local. The bill alleges a conspiracy to oust the plaintiff from his offices of president and business agent of the local and other officers of the local from their respective offices, to usurp their offices, and to obtain control of the property and funds of the local, "all without probable cause or legal justification." No other members of the local have joined the plaintiff in prosecuting the suit.

After the coming in of a master's report containing findings generally adverse to the plaintiff, wherein the master states that there had been introduced in evidence before him more than four hundred exhibits "which are hereby incorporated by reference," the plaintiff filed a motion to recommit and a motion to "set aside" the master's report. The judge denied both motions, entered an interlocutory decree overruling exceptions to the master's report, modifying the report by striking out the words quoted above purporting to incorporate the exhibits, and confirming the report as modified, and entered a final decree dismissing the bill with costs. The plaintiff appealed from the orders (here treated as interlocutory decrees) and from the decrees just mentioned.

There was no error in denying the plaintiff's motion to recommit. Some of the elaborate grounds set forth in the motion depend upon facts as to what took place at the hearing before the master, but it does not appear what, if any, evidence of these facts was introduced at the hearing before the judge. *Pearson* v. *Mulloney,* 289 Mass. 508, 512, 513. Others request reports of evidence or of additional facts, or of further subsidiary facts and were within the discretion of the judge. *Israel* v. *Sommer,* 292 Mass. 113, 119. *Epstein* v. *Epstein,* 287 Mass. 248, 254. Others simply assert that the master's findings are wrong, and still others are plainly unsound and call for no further comment.

The plaintiff has not separately argued his appeal from the denial of his motion to "set aside" the master's report. No reason appears why it should have been granted.

There was no error in striking from the master's report

the words purporting to incorporate therein by reference the evidence embodied in more than four hundred exhibits. There is nothing in the record to show that the master had been ordered to report any evidence, whether oral or in the form of exhibits. Exhibits alone without the oral evidence by which they are identified, explained, and often controlled can seldom be of any value to the court. See *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 484. What is here said does not apply to exhibits which are incorporated as parts of findings of fact made by the master, as a few of them (including the constitutions and by-laws of the local and the international) were in the report now before us. We construe the decree of the judge as referring to the mass of exhibits that were merely reported as having been introduced in evidence.

There was no error in overruling the plaintiff's exceptions to the master's report and in confirming the report as modified. The plaintiff filed one hundred seventy-eight objections to the master's report. There is no merit in any of them. Most of them ignore the elementary rule that an exception to a master's report cannot avail unless error appears on the face of the report itself. *Zuckernick* v. *Jordan Marsh Co.* 290 Mass. 151, 155. *Chopelas* v. *Chopelas*, 303 Mass. 33, 36. They rest upon the assertion of counsel that the master should or should not have made certain findings. *Anderson* v. *Connolly*, 310 Mass. 5, 10. Several complain that there should have been more detail in subsidiary findings — a matter, as hereinbefore stated, within the discretion of the judge on the motion to recommit. The few remaining are obviously groundless and require no discussion.

This brings us to the final decree. At a meeting of the local on September 19, 1939, one Jennings, "International Business Organizer" for the district, under direction of the international president and in pursuance of instructions of the general executive board of the international, took control of the local and "suspended or removed" the plaintiff and some of the other officers of the local from their offices. With the authority and upon the direction of the general

executive board the international president appointed Jennings "receiver" for the local. Later the appointment was ratified by the general executive board. This action by the international in interfering with the officers and affairs of the local is the grievance of which the plaintiff complains. Although the constitution of the international provides for the suspension of local officers and for the appointment of a receiver by the international under circumstances therein stated, the plaintiff contends that those circumstances do not extend to the particular conditions existing in this instance. But we do not find it necessary to rest this decision upon a technical construction of the laws of the organization, since we are satisfied that the plaintiff by his own conduct has disqualified himself to come into a court of equity either in his own behalf or as the sole representative and protagonist of the local. He does not come into court with clean hands. The situation of which he complains was brought about through his own misconduct in the office of president of the local over a long period of time. It will suffice to mention some of the items in the list of wrongful acts of which the master has found him guilty. Having a large measure of control over the expenditures of the local, in spite of protests, he permitted charges for printing to be made against the local so exorbitant that they seem to us difficult, if not impossible, to reconcile with good faith. He incurred large expenditures without proper disclosure of their true objects. He spent yearly from $150 to $160 of the funds of the local for presents of liquor to employees of various newspapers. He made unjustifiable payments or gifts to obtain information. Without authority he constituted himself a delegate to a convention at Portland, Oregon, at an expense of $400. "On his own motion" he took a trip to Denver, taking the secretary-treasurer with him, at an expense of $1,600. A trip with the secretary-treasurer to Houston, Texas, cost the local $1,500, of which the members were not informed in the regular manner. He made many unnecessary trips to New York at large expense, which was "improperly placed upon the local." He drew money for trips in ad-

vance in excess of the amounts expended and improperly retained the differences. He caused about one hundred applicants to be admitted as members, each paying the established initiation fee of $400 (a total of about $40,000), when, as he knew, there was no work for them and they immediately had to take out withdrawal cards. The plaintiff administered the "obligation" to these men, "not in the union meeting," but in another hall in the same building. There was no record of any vote admitting them. The provisions of the constitution were "entirely ignored." Shortly afterwards the plaintiff directed the treasurer to return the initiation fee to "some twenty-five" of the applicants, but they refused to accept it. Later, in the absence of the plaintiff, the union voted unanimously to return these fees, and many of the applicants accepted them. The plaintiff denounced as "Rats and Stool Pigeons" members who he believed had complained of his conduct in this matter. In other respects the plaintiff's management of the affairs of the local is shown to have been high-handed and arbitrary. The meetings over which it was his duty to preside became "highly disorderly." Anything of which he did not approve was "howled down" by members in sympathy with him. In 1937 the local had a deficit of $14,300, in 1938 of $13,500, and in 1939 of $5,500.

As a result of the plaintiff's conduct there was in the local "a constantly rising feeling of dissatisfaction with the plaintiff." In July, 1939, about two hundred fifty members out of a total membership of about six hundred petitioned the president of the international to appoint a "receiver." The officers of the international proceeded carefully. The international president, being fully aware of conditions in the local, was honestly satisfied that those conditions required the appointment of a "receiver." This action "was justified as a measure for the protection of the members of the union, even though the plaintiff had not been heard or granted a trial before that action was taken." There was no intention to deprive the plaintiff of an opportunity to be heard thereafter. There was no improper motive on the part of any of the defendants. The master finds that so

far as it is a question of fact their action was justified. This action was taken at a meeting of the local, which the international organizer attended. So far as appears from the master's report the local, except the plaintiff, has acquiesced in what was done. The master finds that "the rules of the organization which the plaintiff violated, as herein set forth, were constitutional and fundamental, and that those violations have an immediate and necessary relation to the equity herein sought." Compare *Barbrick* v. *Huddell*, 245 Mass. 428, at page 437.

It follows from the findings that conduct of the plaintiff himself which he must have known was unfaithful to the interests he represented lay at the bottom of the whole controversy, rendered him unfit to hold an office of trust and confidence, and precluded the trial judge from deciding in his favor a suit one of the principal objects of which was to restore him to a position where he could have resumed the same course of action. *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554, 561–564. *Howe* v. *Chmielinski*, 237 Mass. 532, 536. *Church* v. *Brown*, 247 Mass. 282, 287. *Shikes* v. *Gabelnick*, 273 Mass. 201, 204–207. *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. *Peabody Gas & Oil Co.* v. *Standard Oil Co. of New York*, 284 Mass. 87. *Taylor* v. *Ashe*, 284 Mass. 182. *State* v. *Mills*, 99 Conn. 217, 222–224. *State* v. *Magie*, 183 Minn. 60, 61. *Overstreet* v. *Lord*, 160 Miss. 444, 450. *State* v. *Jackson County Medical Society*, 295 Mo. 144.

It is unnecessary to deal with other questions in the case.

*Interlocutory decrees affirmed.*
*Final decree affirmed with costs.*