HENRY G. SHAW & another *vs.* UNITED CAPE COD
CRANBERRY CO.

Suffolk.   December 10, 1954. — June 9, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Equity Pleading and Practice*, Master: exceptions to report, report of
evidence, summary of evidence, findings, recommittal. *Accord and.
Satisfaction. Broker*, Commission. *Contract*, With broker.

Exceptions to a master's failure to make findings on unreported evidence
or to findings claimed to be contrary to such evidence have no stand-
ing in view of the rule that an exception to a master's report must be
founded on error apparent on the face of the report. [678]
A master should not report the evidence heard by him unless ordered to
do so by the trial court. [678]
Whether or not a master shall report evidence rests in the discretion of
the trial court. [679]
A report of evidence by a master and a summary of evidence by him under
Rule 90 of the Superior Court (1954) distinguished. Per QUA, C.J.
[679]
Recommittal to a master for further findings lies in the discretion of the
trial court. [680]
A finding by a master in a suit in equity for an accounting of sums al-
legedly due in accordance with a contract respecting the superin-
tendence by the plaintiffs of the operation of certain cranberry bogs
owned by the defendant, that when, several years after the making of
the contract, the parties agreed to a cancellation thereof and to a pur-
chase of the bogs by the plaintiffs, "any sums due either party by the
other, as a result of the joint venture, were cancelled by agreement,
so that the only thing due was the purchase price" of the bogs, and
that the purchase was actually made, warranted in the circumstances
a conclusion of an accord and satisfaction as to all matters, even
though such accord and satisfaction might have been based on honest
mistakes by the parties in their bookkeeping respecting the venture.
[680–681]
Evidence that the owner of a cranberry bog employed a broker to find a
customer therefor for a specified amount and agreed that the broker
should keep as his commission any sum realized in excess of that
amount, and that the owner sold the bog to a customer procured by
the broker for only such amount, warranted a finding that no com-
mission was due the broker. [681–682]

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated June 27, 1952.

The suit was heard by *Morton*, J., upon a master's report.

*Jules E. Angoff*, for the plaintiffs.

*Frank W. Crocker* (*Levin H. Campbell* with him,) for the defendant.

QUA, C.J. By this bill the plaintiffs, husband and wife, seek an accounting by the defendant of sums claimed to be due from the defendant to the plaintiffs in accordance with a sealed contract entered into between the parties under date of November 17, 1939. By amendment with the consent of the defendant there was added a claim for a "commission" or, as otherwise expressed, for "the fair value of . . . services" alleged to be due to the husband or to the husband and wife jointly for procuring a purchaser for the "Starr" bog, owned by the defendant. This last mentioned claim has been treated by both parties as properly to be included in a suit for accounting under the contract. There is no reason why we should not treat it in the same manner.

By the terms of the contract the plaintiffs were to superintend the operation of certain cranberry bogs in Plympton also owned by the defendant. The defendant was to have the net income until its investment in the property should have been paid with five per cent interest. The plaintiffs were to have a drawing account of not exceeding $100 a month from half the annual net income. After the defendant's capital investment should have been repaid with interest the annual net income less necessary working capital, to be maintained at not less than $100 an acre, should be divided equally between the plaintiffs and the defendant. If the defendant should sell the property, the balance of the sale price, after deducting any amounts due the defendant under the contract, should be equally divided between the plaintiffs and the defendant. Further details of the contract need not be stated.

The cause was referred to a master. The hearing covered an accounting and examination of the defendant's books for

almost eleven years, consumed parts of twenty-one days, and resulted in a transcript of fourteen hundred fifty-one pages. The report of the master established these facts: The contract was "operative until it was mutually dissolved in August, 1948." The plaintiffs sowed and reaped the crops, hired the help, and delivered the berries to the National Cranberry Association, which accounted to the defendant. The defendant financed the venture and kept the books. From time to time the plaintiff Henry G. Shaw sought accounting from the defendant, and "certain accountings were made and adjustments executed." The plaintiffs kept the payroll record and the record of miscellaneous expenses. The defendant accepted these records as submitted to it as they accrued and relied upon the plaintiffs "for the accuracy and honesty of such records." The plaintiffs relied upon the defendant "for the accuracy and honesty of the records" kept by the defendant. From time to time there were inaccuracies in the payroll records submitted by the plaintiffs and in the books of the defendant, so that these books did not show an accurate account between the parties. "There was never any intent of either party to commit fraud on the other." The plaintiffs on a number of occasions asked for clarification of the account between the parties and for adjustments. In 1943 adjustments on the defendant's books were made, credits of $9,838.90 were given to the plaintiffs, and the parties agreed "that the adjustments made were a satisfactory accounting of all transactions between them through the year 1943." In August, 1948, the parties agreed to a cancellation of the contract and the purchase of the bogs by "the plaintiff" from the defendant for $45,000. "As a part of the agreement entered into at that time, any sums due either party by the other, as a result of the joint venture, were cancelled by agreement, so that the only thing due was the purchase price of $45,000." The plaintiffs did purchase the bogs for that price.

There were, however, further findings that the defendant had erroneously charged the plaintiffs $175 for labor of the plaintiff Henry G. Shaw performed in the sole interest of

the defendant; that this item was not cancelled by the agreement of August, 1948; and that there accrued to the joint venture after August, 1948, another item not cancelled by the agreement as of that time. On account of these items the master found that there was due from the defendant to the plaintiffs $466.05.

As to the claim for a commission or for services for procuring a purchaser for the "Starr" bog the finding of the master was, "The defendant agreed to and did sell the 'Star Bog' for the price of $350,000. It did not agree to pay a commission to the plaintiffs for a sale at that price, and no commission is due the plaintiffs for this sale."

The trial judge by interlocutory decree denied motions of the plaintiffs to vacate the rule to the master and to recommit, and overruled the plaintiffs' exceptions to the master's report and confirmed the report. He also entered a final decree in favor of the plaintiffs for the small sum found by the master, with interest. The plaintiffs appeal from the interlocutory and final decrees.

The plaintiffs filed sixty-nine numbered objections, which became exceptions, to the master's report, some of them containing numerous subdivisions. The evidence before the master is not reported. Obviously it is impossible to discuss these exceptions separately. Most of them are to failure of the master to make findings desired by the plaintiffs or to findings asserted to be contrary to the evidence or are otherwise dependent upon the unreported evidence. All these have no standing. The report does not disclose error on its face in respect to them. *Minot* v. *Minot*, 319 Mass. 253, 258–259, and cases cited. *Cantor* v. *Cantor*, 325 Mass. 719, 722. *Garfield* v. *Garfield*, 327 Mass. 529, 533. A few are to the failure of the master to report evidence. But the master was right in not reporting evidence in the absence of an order of the court. *Rosman* v. *Rosman*, 302 Mass. 158, 160. *Leventhal* v. *Jennings*, 311 Mass. 622, 624. Some of the exceptions are on the ground that the master "failed to consider the law" in certain respects. Exceptions of this kind have no standing. If the report shows

error of law on its face objections can be filed on that ground. Some exceptions are immaterial for other reasons. Still other exceptions are directed to the contention that the master should have made more detailed and subsidiary findings on various points. We shall deal with this contention in connection with the motion to recommit.

The plaintiffs' motion to recommit states eighty-six numbered purposes for recommittal, some of them containing subdivisions. Many of them ask for reports of the evidence taken by the master either as a whole or as to specified matters. It has long been settled that whether a master shall report evidence for the purpose of having his findings of fact reviewed by the court rests in the discretion of the court. *Cook* v. *Scheffreen*, 215 Mass. 444, 448. *Smith* v. *Lloyd*, 224 Mass. 173. *Morin* v. *Clark*, 296 Mass. 479, 483. *Minot* v. *Minot*, 319 Mass. 253, 258. Reports of evidence are to be distinguished from the summaries of evidence provided for in Rule 90 of the Superior Court (1954). Reports of evidence include all the evidence as to the points on which the court orders such reports, and are for the purpose of enabling the court to review the master's findings of fact. Such reports are not frequently ordered. The summaries of evidence provided for in Rule 90 are not for the purpose of reviewing findings of fact, but are "for the sole purpose of enabling the court to determine . . . [a] question of law" raised by an objection presented to the master. Such summaries are not necessarily of all the evidence or even of all the evidence on a particular point, but are only "of so much of the evidence as shall be necessary" to determine whether the master's ruling of law was correct. The plaintiffs' requests for reports of evidence in their motion to recommit are of "all of the evidence" on the several points. They are not for summaries of evidence under Rule 90. They are not tied in as required by Rule 90 with objections presented to the master clearly raising questions of law. *Epstein* v. *Epstein*, 287 Mass. 248, 253–254. *Morin* v. *Clark*, 296 Mass. 479, 482–483. *Buckley* v. *John*, 314 Mass. 719, 724–725. *Minot* v. *Minot*, 319 Mass. 253, 259–261.

*Morrison* v. *Morrison,* 320 Mass. 133, 137–138. So far as appears either from the few instances in which summaries were requested in the objections or from the motion to recommit it is as consistent with the language used that the summaries and the evidence were desired to enable the court to decide facts as that the purpose was to present to the court questions of law. The matter of ordering evidence reported therefore remained in the discretion of the court. *Epstein* v. *Epstein,* 287 Mass. 248, 254. *George C. Miller & Co. Inc.* v. *Beagen,* 293 Mass. 54. *Morin* v. *Clark,* 296 Mass. 479, 483. *Minot* v. *Minot,* 319 Mass. 253, 261.

Many of the purposes enumerated in the motion to recommit, like some of the objections to the master's report, were directed to the alleged failure of the master to make sufficient detailed and subsidiary findings. Whether the court should recommit for further detailed and subsidiary findings is ordinarily a matter resting in the discretion of the judge. *MacLeod* v. *Davis,* 290 Mass. 335, 338–339. *Black* v. *Parker Manuf. Co.* 329 Mass. 105, 117–118. It seems to us that further detail might well have been given on some points, but there are two findings that seem so plain and so clearly decisive of the merits of the cause both as to the accounting under the contract and as to the claim for the real estate commission that we think additional findings were not necessary and that there was no error requiring reversal. We refer first to the finding that when the contract was cancelled in 1948 and the plaintiffs bought the bogs for $45,000 "any sums due either party by the other, as a result of the joint venture, were cancelled by agreement, so that the only thing due was the purchase price of $45,000." This, when read in connection with the finding that the purchase was actually made, seems a clear statement of an accord and satisfaction. The plaintiffs argue that, even if there was no intent to defraud them, they would not be bound by a settlement if based upon mistakes made by the defendant of which the plaintiffs had no knowledge. The present record does not show that the plaintiffs had actual knowledge of each mistake, but the

master had previously found that there had been mistakes on both sides, and that the plaintiffs knew of previous inaccuracies in the defendant's books and had asked for clarifications and adjustments. In 1943 an adjustment of $9,838.90 had been made in favor of the plaintiffs. In these circumstances we think the finding quoted above must be construed to mean that the parties agreed that the purchase of the bogs by the plaintiffs for $45,000 should end everything up to that point, even though there might be honest mistakes in the bookkeeping on either side. *Aldrich* v. *Travelers Ins. Co.* 317 Mass. 86. *Allen* v. *Plymouth,* 313 Mass. 356, 362–364. Williston on Contracts (Rev. ed.) § 1543. Restatement: Restitution, § 11 (1). Compare *Flynn* v. *Colbert,* 251 Mass. 489, 492. See *Arnold* v. *Maxwell,* 223 Mass. 47, 51–52.

The other finding to which we refer is the finding that the defendant sold the "Star Bog" for $350,000 but "did not agree to pay a commission to the plaintiffs for a sale at that price, and no commission is due the plaintiffs for this sale." This seems a clear finding that the plaintiffs did not earn a commission. The plaintiffs argue that if the defendant was willing to sell and did sell to the plaintiffs' customer the defendant owes a fair commission on the selling price which the defendant finally accepted. It is true that there have been many cases where a plaintiff broker who has performed his contract has been permitted to recover a fair compensation in the absence of a previous agreement as to the amount. This would often be the case where the broker's employment was to find a purchaser on such terms as the seller might accept, but always regard must be had to the nature of the broker's employment. The finding of the master means that the plaintiffs were not employed to find a purchaser on such terms as the defendant might accept. The key to the interpretation of the finding may be discovered in the affidavit of the plaintiffs' attorney filed in connection with the motion to recommit. According to this affidavit the evidence before the master was that the plaintiff Henry G. Shaw was to

find a customer for $350,000 and to keep as his commission any sum realized in excess of that amount. It does not appear that there was any evidence of a change in the terms of employment. When the defendant and the customer came to make the trade nothing was realized above the $350,000. Therefore by the terms of the employment no commission was due. *Munroe* v. *Taylor*, 191 Mass. 483. *Noyes* v. *Caldwell*, 216 Mass. 525. *Carpenter* v. *Blake*, 251 Mass. 47. *Pagum* v. *White*, 259 Mass. 437. *Staula* v. *Carrol*, 312 Mass. 693. *Rich* v. *Mezzetti*, 323 Mass. 669. There is nothing to the contrary in *Henderson & Beal, Inc.* v. *Glen*, 329 Mass. 748, cited by the plaintiffs.

We are accordingly of opinion that there was no error in denying the motion to vacate the rule to the master, or in overruling the exceptions and confirming the master's report, and that there was no abuse of discretion in denying the motion to recommit. See *Thompson* v. *Davis*, 225 Mass. 385.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs of*
> *appeal to the defendant.*