JOHN A. BREEN vs. BAY STATE HARNESS HORSE RACING AND BREEDING ASSOCIATION, INC. & others.

Suffolk. October 3, 1956. — November 9, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Contract*, What constitutes. *Equity Pleading and Practice*, Appeal, Record, Omitted matter.

Subsidiary findings by a master in a suit in equity respecting a course of dealing among promoters of a race track, including the formation of corporations in connection with the enterprise, justified a conclusion of the master that the defendant was under a contractual obligation to deliver to the plaintiff certain shares, or voting trust certificates representing them, and debentures of the corporations which were issued to and in the name of the defendant, although there was no subsidiary finding of any promise to deliver them made in specific words by the defendant. [643–644]

An affidavit by counsel in support of a motion to recommit to a master and setting forth parts of the testimony heard by the master, which was presented in the absence of any order for a report of the evidence or summary of evidence under Rule 90 of the Superior Court (1954) and was not stamped as filed nor docketed by the clerk, was not a part of the court record nor appropriate matter to print as an appendix to a brief under Rule 2 (F) of the Rules for the Regulation of Practice before the Full Court (1952); nor was there error in the denial of a motion to correct the record and docket with respect to the affidavit. [645–646]

BILL IN EQUITY, filed in the Superior Court on January 15, 1951.

The suit was heard by *Forte, J.*, on a master's report.

*Frederick D. Vincent, Jr.*, (*Thomas J. Colbert* with him,) for the defendant Bowser.

*Isadore H. Y. Muchnick*, (*James M. McDonough* with him,) for the plaintiff.

WHITTEMORE, J. This is a bill in equity to enforce oral contracts to deliver stock, or voting trust certificates representing stock, in Bay State Harness Horse Racing and Breeding Association, Inc. (Bay State), and Norfolk County

Concessionaires, Inc. (Norfolk), and debentures of Bay State. The case was referred to a master who found a valid contract to deliver the securities subject to certain pledges of the shares of stock. The defendant Bowser (hereinafter called the defendant) appealed from an interlocutory decree denying a motion to recommit and from the final decree which ordered delivery of the securities, subject to the pledges. There is also before us the defendant's bill of exceptions claiming error in the denial of a motion to correct the docket and the filing record in respect of an affidavit submitted in support of his motion to recommit. There was no error.

The defendant undertakes to show inconsistencies in the master's report such that his motion for recommittal should have been allowed as matter of law. We have carefully examined the report and do not find the inconsistencies specified. It shows a long course of dealing between promoters of a race track, which was finally located at Foxboro in 1946, with the eventual issuance to and in the name of the defendant of those shares and debentures which were to go to the promoters not in the Loew group.

It is manifest, as the defendant contends, that there is not found or suggested in the subsidiary findings any single occasion when the defendant, in so many words, made the specific promise to the plaintiff stated in the conclusion of the master that "the defendant Bowser promised to deliver to Breen voting trust certificates representing 2,500 shares of Bay State and 5,000 shares of Norfolk, and $35,000 of the $175,000 debentures issued to Bowser by Bay State on August 18, 1947." But the subsidiary findings do show a course of dealing in which Bowser was at all relevant times active for the group which included Breen, an early understanding that Breen's share should be ten per cent, an affirmation of that intention as to both corporations when it was decided to embody the enterprise in two corporations rather than one, an agreement that Breen was to give up half[1] of his Bay State stock when Loew joined the enterprise and

---

[1] The record says "5% of his Bay State stock." We understand that one half of his ten per cent or five per cent of the total is intended.

provided a large amount of needed funds, and was to receive $35,000 of debentures in place thereof, and an early agreement that the defendant, who became president of the corporations, should receive all the stock for his group to be held for its members. It will serve no useful purpose to discuss the findings in detail. Notwithstanding changes in parties and in the proposals for division of interests, the absence of writings, and the uncertainties as to some aspects of the arrangements at various times, the conclusion was open that the defendant had made, and from time to time, as the plans changed, reaffirmed, an obligation to this plaintiff, which in respect of the enterprise as finally formed could be accurately stated in the conclusion of the master.

There is nothing in the claim stressed by the defendant of inconsistency between the master's findings that the agreement between the parties was that the plaintiff was to receive the securities for *all* that he did, including services rendered after the Foxboro site was determined upon as well as earlier services, and that the plaintiff had no claim against Bay State for the later services, and his finding[1] that the

---

[1] "The defendant Bowser contended that the plaintiff's claim for services set forth in the original bill and for which the law action was brought somehow impaired or nullified the plaintiff's claim for the trust certificates and debentures; the plaintiff on the other hand contended that the two claims were not incompatible, since it was his version of the agreement that any services rendered by him in the development of the track before the Foxboro site was agreed upon in September or October of 1946, and any claims for money advanced by him for land or to pay the contractor, formed part of the consideration for Bowser's promise to give him voting trust certificates and debentures, but that any services performed by him in helping to develop the track after Foxboro was agreed upon were to be paid for by Bay State as a corporate obligation, in addition to Bowser's obligation to deliver the voting trust certificates and debentures.

"With reference to these contentions, I find that when the matter of debentures was under discussion during the negotiations with Loew, an effort was made by Loew to determine what services and expenditures made up the $175,000 which Bowser suggested should be issued in debentures. Breen was asked by Mr. Slater, the attorney for Loew, whether he had any claim other than that included in the $175,000 figure against Bay State, and Breen answered that he had no other claim.

"I find therefore that the agreement between Breen and Bowser was that Breen was to receive the voting trust certificates and debentures for all of his services in the development of the track, whether performed before or after the Foxboro site was agreed upon, and for his advances in connection with land purchases and contractor's bills, and that there was no understanding or agreement, express or implied, with Bowser or anybody else representing Bay State that he was to receive any payment in addition from Bay State."

plaintiff *claimed* that the services after the Foxboro decision also furnished consideration for a corporate obligation. See *Swartzman* v. *Babcock*, 218 Mass. 334, 337. The fact that the plaintiff's representation, which the master construed to show no claim against the corporations, also suggests that the plaintiff had no claim against the defendant except for debentures did not require the master to find that the plaintiff intended so to state, or to find no obligation to deliver the stock.

The bill of exceptions shows that the defendant presented to the court with his motion to recommit an "affidavit of counsel in support" thereof, that the clerk did not stamp the affidavit as filed or docket it, and that the court denied a motion to correct the record and docket. The affidavit, as averred, sets out parts of the transcript in which the plaintiff, as the defendant contends, made answers which are inconsistent with the claim of a contract or the contract which was found. Rule 2 (F) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 694, provides that if the trial judge "orders any designated matter omitted . . . a party deeming himself aggrieved may print as an appendix to his brief any such matter omitted . . . ." The defendant has printed the affidavit as an appendix to his brief.

The affidavit, unfiled, was not a part of the record. An order of the Superior Court judge was necessary to require a report of the evidence. *Royal Tool & Gauge Corp.* v. *Clerk of the Courts for the County of Hampden*, 326 Mass. 390, 391. The allowance of a motion for such report is in the wide discretion of the judge. *Minot* v. *Minot*, 319 Mass. 253, 258.

The question of law whether the conclusion that there was a contract was open on all the evidence, including that in the affidavit, could have been presented in the absence of all the evidence only by a summary of all the relevant evidence in accordance with Rule 90 of the Superior Court (1954). *Minot* v. *Minot, supra,* at page 259. There was no error in failing to treat as a part of the court record a statement of the evidence which the trial judge could not

consider. There was no error in the denial of the motion to correct the record and docket. The affidavit was therefore not appropriate matter to print with the brief under our rule. Nevertheless we have examined the affidavit and note that, whether or not it sets out all the relevant testimony, it does not, in our opinion, read as a whole and notwithstanding certain answers which the defendant understandably stresses, require a conclusion at variance with that which the master has made.

> *Final decree affirmed with costs of the appeal as against the defendant Bowser.*
> *Exceptions overruled.*